MACK *v.* SCOTT.

5-1836                                           323 S. W. 2d 929

Opinion delivered May 4, 1959.

[Rehearing denied June 1, 1959]

*Spencer & Spencer,* for appellant.

*W. R. McHaney,* for appellee.

J. Seaborn Holt, Associate Justice. Appellees, Scott and McHaney, doing business as Scott and Mc-Haney Well Service Company, and Jim Cook, intervenor herein, sued J. E. Powers, Willie Mack and Spring Oil Company, Inc., appellants, for work and labor performed and materials furnished on three oil wells, in January 1956, on property alleged to be owned and controlled by appellants. Scott and McHaney sought a judgment in the amount of $290.50 and asked that said judgment be declared a lien. Jim Cook sought a judgment of $79.50 for work and supplies on one of the above oil wells and also asked for a lien. A trial resulted in a decree for Scott and McHaney against Spring Oil Company, Inc., and Willie Mack for the amount claimed and also allowed them a lien and awarded foreclosure of the lien on the property for this amount. The court also entered a decree in favor of Jim Cook for "a personal judgment against Spring Oil Company and Willie Mack" for $79.50

but his prayer for a lien was denied. This appeal followed. For reversal appellants rely on the following points. "I — There is no evidence proving an account and the finding of the chancellor that an account was proved is against the clear preponderance of the evidence. II — The undisputed evidence shows that any account (even if proved) was charged against J. E. Powers and there is no evidence on which to base a judgment against either Spring Oil Co., Inc., or Willie Mack. III — The undisputed evidence shows that no notice of intention to file lien was served on Spring Oil Co., Inc., or anyone else in proper manner and lien was not filed against their interest in property — subjecting property to lien is clearly erroneous under these circumstances. IV. — Willie Mack was never served as a party defendant and rendering judgment against him when he has not been made a party was clearly erroneous."

After a careful review of all the testimony, some of which is in conflict, we think the preponderance thereof, in effect, supports the following summation: Willie Mack owned the land and the three oil wells on which the work was performed. He was the principal owner of the Spring Oil Company, Inc., was its president and agent. On December 28, 1955, Spring Oil Company, Inc., entered into a contract with J. E. Powers which gave Powers the option to purchase these wells for a consideration of $35,000 and gave him the right to take possession, to operate the wells, and to do such work on them as he cared to do, at his own expense. W. B. Harmon, who was a pumper on the lease, and Willie Mack's employee, told Scott and McHaney to do the work involved here on the Spring Oil Company lease. When they arrived to do the work, Harmon directed them as to the work that they did and on at least one of the days while they worked, Willie Mack and his son were present, saw the work going on and Mack made no objection. After the work was completed, Mack and Powers directed Mr. McHaney, Sr., who kept books for Scott and McHaney, to charge the work done by these appellees to Powers. Two bills, properly stating the two accounts, were sent to Powers who refused to pay them. Prior to

performing the work here involved, Scott and McHaney and Jim Cook had serviced wells on what was known as the Spring Oil Company lease on Harmon's request and all these bills were paid by Willie Mack. On April 4, 1956, Scott and McHaney filed an affidavit for a laborer's lien on the "Spring Oil Company lease" on which the wells were located, alleging that they had performed the labor on the order of J. E. Powers and his agent. No notice of intention to file the lien was given Spring Oil Company in the statutory manner. Jim Cook, on orders of W. B. Harmon, performed work on one of the wells and was told to charge the work to J. E. Powers. He testified: "A. He (Willie Mack) told me that Mr. Powers would pay the bill, if he didn't he would. Q. He told you to charge it to Mr. Powers? A. That's right. Q. And that he was responsible for it and if Mr. Powers didn't pay it he would? A. No, he didn't say 'I'm responsible'; he said, 'you know my company is responsible for it.' Q. He said if Mr. Powers didn't pay you he would? A. He would. Q. But that Mr. Powers was the one for you to bill it to and the one to pay it? A. Yes, sir." Cook filed no lien and claimed none but in his intervention against Powers and Willie Mack, alleged that he "was employed by J. E. Powers and Willie Mack, their agents and employees, ................ That, for his services he earned the sum of $79.50; ............ was entitled to a judgment against each of the defendants in the full sum sued for,".

Appellants first contend that there were no accounts proved and that the evidence was not sufficient to support the judgments herein against either Willie Mack or Spring Oil Company, Inc. We do not agree. We have concluded that the preponderance of the testimony shows that Powers, in the circumstances, was not only acting for his own interest, but as the agent of Willie Mack and the Oil Company with apparent authority, when he secured the services of Scott and McHaney to perform the work on the three wells, and the services of Jim Cook to perform work on one of the wells in which he and Willie Mack were interested. The rule of law appears to be well settled that "The authority of an agent

must be shown by positive proof or by circumstances that justify the inference that the principal has assented to the acts of his agent. ................ Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess," *Pierce* v. *Fioretti*, 140 Ark. 306, 215 S. W. 646. See also, *Ozark Mutual Life Association* v. *Dillard*, 169 Ark. 136, 273 S. W. 378.

But, say appellants, Scott and McHaney gave no proper notice to entitle them to a lien against Spring Oil Company, Inc. We do not agree for the reason that in the circumstances here, no notice was required since we are holding that the material and labor were furnished under an agreement with Powers, the owner's agent, *Arkmo Lumber Co.* v. *Cantrell*, 159 Ark. 445, 252 S. W. 901.

While it is true that Willie Mack was not personally served with a summons, the record shows that he was made a defendant, and that the Spring Oil Company, Inc., as indicated, principally, if not entirely, owned by Willie Mack, was made a defendant, served with a summons on November 21, 1956 and filed a separate answer on January 2, 1957. Willie Mack was present and testified at the trial that he did not agree that Spring Oil Company would pay the accounts here if Powers did not. We think it clear, therefore, that Willie Mack knew, or must have known of the proceedings in ample time to have made any defense that he might have desired and in the circumstances, no summons on him was required. We said in *Woods* v. *Quarles*, 178 Ark. 1158, 13 S. W. 2d 617, "One who is aggrieved by a judgment rendered in his absence must show, not only that he was not summoned, but also that he did not know of the proceeding in time to make a defense." (Citing many cases)

Finding no error, the decree is affirmed.

GEORGE ROSE SMITH & McFADDIN, JJ., dissent.